UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ANA H.,[1] | Case No. 6:20-cv-00733-MK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, Social Security Administration, | |
| Defendant. | |

**Kasubhai,** United States Magistrate Judge:

Plaintiff Ana H., seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 5. For the reasons that follow, the Commissioner's final decision is REVERSED and this case is REMANDED for an immediate calculation and payment of benefits.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non–government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed her application for DIB on May 28, 2015, with an alleged onset date of August 1, 2010. Tr. 100; *see also* Tr. 271.[2] In May 2018, Plaintiff was initially found not disabled within the meaning of the Act. Tr. 97–99. However, in April 2019, the Appeals Council vacated the decision and remanded the claim to an Administrative Law Judge ("ALJ") to obtain additional medical expert testimony and reconsider Plaintiff's residual functional capacity ("RFC"). Tr. 117–18. On September 17, 2019, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 12–27. Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 39 years old at her alleged onset date. *See* Tr. 271. She has a GED and past relevant work experience as a waitress and administrative clerk. Tr. 25, 39–40. Plaintiff alleges disability based on depression, cervical spine issues, fibromyalgia, and migraines. Pl.'s Op. Br. at 2, ECF No. 18.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the

---

[2] "Tr." citations are to the Administrative Record. ECF No. 17.

ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured status requirements of the Act and that she had not engaged in SGA during from her alleged onset date through her date of last insured status. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: depression and anxiety. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18. The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [She] could understand, remember, and carry out simple instructions, work in an environment with few changes. She could have only superficial interactions with co-workers with the public and occasional interaction with coworkers, but no team activities.

Tr. 19.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ found that in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite her impairments. Tr. 26. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 27.

## DISCUSSION

Plaintiff asserts that remand is warranted for three reasons. First, she asserts the ALJ failed to supply clear and convincing reasons to reject her subjective symptom testimony. Second, she contends the ALJ failed to supply legally sufficient reasons for rejecting the medical opinion evidence. And third, as a result of those errors, she argues that her RFC was not supported by substantial evidence. *See* Pl.'s Op. Br., ECF No. 18. The Court addresses each argument in turn.

**I.      Subjective Symptom Testimony**

Plaintiff contends that the ALJ failed to identify legally sufficient reasons to reject her subjective symptom testimony. *See* Pl.'s Op. Br. at 2, ECF No. 18. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is

insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff alleged that her ability to work was limited by depression, cervical spine sequela, fibromyalgia, and migraines. Tr. 86. She indicated that due to her depression, she cannot feel happiness, requires excessive sleep, struggles to retain information and concentrate, has social anxiety and low energy levels, and feels a loss of interest in life. Tr. 50–51, 312, 317. Plaintiff's fibromyalgia causes constant pain, daily. *Id.*

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

In terms of functional limitations, Plaintiff testified that she experiences pain when lifting objects or making repetitive movements; and she cannot sit for more than twenty minutes at a time or pay attention for more than five minutes. Tr. 312–17. She also explained that her medications cause drowsiness, which can cause her to fall asleep often during the day. *Id.*

The Commissioner argues the ALJ properly rejected Plaintiff's subjective symptom testimony for two reasons: (1) inconsistency with her activities of daily living and (2) inconsistency with the medical record. Def.'s Br. 3–6, ECF No. 20.

**A.      Activities of Daily Living**

The ALJ found that Plaintiff's activities of daily living were inconsistent with her allegations. Tr. 23. The Commissioner directs the Court to two of the ALJ's rationales in defense of the decision: Plaintiff's graduation from beauty school and her ability to exercise. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony: (1) where the activities "contradict [a claimant's] testimony"; or (2) as evidence a claimant can work if the activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

       1.      Beauty School

As noted, the ALJ found that Plaintiff's alleged symptoms were inconsistent with graduating from beauty school. Tr. 23. A careful review of the record, however, reveals that the ALJ overstated Plaintiff's ability to regularly attend classes and that her providers regularly

excused her absences because she was incapable of attending classes. Tr. 49; *see also* Tr. 1039 (excusing absence based on Plaintiff's anxiety); Tr. 1042–43 (excusing absence based on side effects of new medication); Tr. 1055–56 (excusing multiple absences in January 2013); Tr. 1059 (explaining that Plaintiff frequently receives "note[s] to be excused from school due to her various medical conditions"). Further, the Court notes that Plaintiff took approximately thirty months to graduate from an eighteen-month program. *Id.* As such, Plaintiff's sporadic attendance at beauty school and graduation from a program in nearly twice the anticipated time did not in fact contradict Plaintiff's subjective symptom testimony.

        2.       <u>Exercise</u>

The ALJ also found that Plaintiff's testimony was inconsistent with her ability to exercise. Tr. 21–23. The record, however, does not support the conclusion. Rather, it confirms that Plaintiff presented with serious mental health symptoms concurrently with her reported exercise. Tr. 1045–46, 1451. In other words, Plaintiff's ability to exercise coexisted with her debilitating symptoms and was actually a coping mechanism for her mental health impairments. For example, in February 2013, Plaintiff reported that she had been exercising regularly, but nevertheless presented with major depression. Tr. 1045–56. And in November 2009, Plaintiff reported to her counselor that she used exercise to manage stress and depression. Tr. 1451. Accordingly, Plaintiff's exercise regimen was consistent with her subjective symptom testimony.

**B.**    **Medical Record and Improvement**

The ALJ also cited various portions of the medical record in his decision. Tr. 20–23. The ALJ explained that Plaintiff significantly improved with treatment. Tr. 22. The ALJ highlighted two specific instances during which Plaintiff stopped taking Cymbalta and seemed to imply these instances demonstrated that (1) Plaintiff was noncompliant and (2) Plaintiff's impairments were

controlled with medication. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ may discount testimony for "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that "can be controlled effectively with medication are not disabling for the purpose of determining eligibility").

An independent review of those records, however, reveals that Plaintiff's cessation of Cymbalta came at the behest of medical providers and therefore was not an appropriate reason to discount her subjective symptom testimony. First, in October 2011, Plaintiff participated in a Cymbalta therapy study that "incorrectly" advised her to discontinue her Cymbalta after which she experienced anxiety, confusion, and dizziness. Tr. 1088. Second, in early Fall 2012, Plaintiff was "tapered" off Cymbalta, which was no longer "effective" in treating her symptoms; her depression and pain increased thereafter. Tr. 1060–63. Three weeks later, however, her providers restarted the medication. Tr. 1059. Plaintiff's reliance on, and compliance with, instructions from medical providers to adjust her medication regimen does not undermine her symptom testimony. Instead, it demonstrates Plaintiff's strong motivation to alleviate her symptoms. *See* Tr. 1061 (noting that Plaintiff stopped "Cymbalta 3 weeks ago" and that Plaintiff was "tearful when talking about her pain and frustration with not being able to find an etiology . . . [she] just wants to know what is wrong with her").[4]

Finally, a review of the record shows that, although Plaintiff's impairments at some points improved, her symptoms waxed and waned throughout the relevant period and her

---

[4] The ALJ cited two other reports in which Plaintiff stopped taking her medication. Tr. 553, 1076. However, those examples are duplicative of the records cited by the ALJ discussing the Cymbalta study. The Court declines to discuss these records further.

Page 9 — OPINION AND ORDER

impairments persisted despite the evolving cocktail of medications prescribed to her. *See, e.g.*, Tr. 535, 551–53, 1049, 1061, 1069, 1072, 1076, 1088. For example, between May and September 2012, Plaintiff was treated with Lorazepam, Cymbalta, Clonazepam, Trazodone, and Alprazolam yet nonetheless presented with insomnia, anxiety, mood instability, low mood, and anhedonia. Tr. 549–55.

The Ninth Circuit has repeatedly reiterated that ALJ's should exercise caution relying on purported improvement in mental health context:

> As we have emphasized while discussing mental health issues, it is error to reject [evidence] merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). As such, the medical record was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.[5]

In sum, the ALJ failed to identify clear and convincing reasons reject Plaintiff's subjective symptom testimony and is therefore reversed.

## II.    Medical Opinions

Plaintiff contends that the ALJ improperly weighed the medical opinions of record. *See* Pl.'s Op. Br. at 5–13, ECF No. 18. The ALJ is responsible for resolving conflicts in the medical

---

[5] The Commissioner additionally notes that the ALJ also cited objective medical records in rejecting Plaintiff's subjective symptom testimony. However, as the Commissioner concedes, an ALJ may not reject a claimant's testimony solely based on a lack of substantiating medical evidence. Here, because the ALJ's alternative rationales for rejecting Plaintiff's testimony fail to pass muster, the objective evidence standing alone was insufficient to reject Plaintiff's testimony. *See Reddick*, 157 F.3d at 722–23 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

record, including conflicting doctors' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The law distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non–examining physicians. *See* 20 C.F.R. §§ 404.1527, 416.927.[6] A treating doctor's opinion that is not contradicted by the opinion of another doctor can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Where a doctor's opinion is contradicted, however, the ALJ must provide "specific, legitimate reasons" for discrediting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quotation omitted).

    A.    **Beata Anasz-Kopecka, M.D.**

Dr. Anasz-Kopecka served as Plaintiff's primary care physician and saw her quarterly beginning in 2011. Tr. 45, 1247. In 2018, the doctor diagnosed Plaintiff with major depressive disorder and severe fibromyalgia. Tr. 1247. Dr. Anasz-Kopecka explained that Plaintiff's impairments caused chronic fatigue, lack of energy, cognitive slowing, and daily headaches. *Id.* Dr. Anasz-Kopecka opined that Plaintiff's symptoms had been present her entire life, but they became "bad" in 2000. Tr. 1250.

Dr. Anasz-Kopecka based her opinion on a host of clinical finding that included psychomotor slowing, tearfulness, anxiety, as well as problems with cognitive tasks such as memory and concentration. Tr. 1247. The doctor noted that Plaintiff's medication produced side effects that included grogginess, dizziness, forgetfulness, and would impact her ability to work.

---

[6] The Commissioner has issued revised regulations changing this standard for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Plaintiff's claim was filed before March 27, 2017, and therefore is controlled by 20 C.F.R. §§ 404.1527, 416.927.

*Id.* Dr. Anasz-Kopecka noted that Plaintiff's impairments would likely produce both "good days and bad days." Tr. 1250.

In terms of Plaintiff's functional limitations, Dr. Anasz-Kopecka opined that Plaintiff could walk three city blocks without pain; sit for an hour and a half, stand for ten minutes, and sit less than two hours of an eight-hour workday. Tr. 1248–49. The doctor further opined that Plaintiff could never carry an object over ten pounds, bend over or crouch, and could only finely manipulate objects two hours of an eight-hour workday. Tr. 1249. Finally, Dr. Anasz-Kopecka assessed that Plaintiff's symptoms would be so severe that she would be "off task" more than twenty-five percent of a workday and absent from work at least four days per month. Tr. 1250.

The ALJ assigned Dr. Anasz-Kopecka's opinion little weight. Tr. 24. The Commissioner argues this was proper because the doctor's opinions was (1) inconsistent with examinations of Plaintiff's condition prior to her date of last insured; (2) inconsistent with Plaintiff's activities of daily living; and (3) poorly supported. Notably, the Commissioner acknowledges that because the doctor's opinion was not contradicted, the ALJ was required to provide clear and convincing reasons for rejecting the opinion.

        1.        <u>Inconsistency with Examinations During Relevant Period</u>

The ALJ found that Dr. Anasz-Kopecka's opinion was inconsistent with examinations conducted during the relevant period. Tr. 24. Specifically, the ALJ noted that Plaintiff's "fibromyalgia was not diagnosed until after [her] date last insured" and therefore discounted the doctor's opinion. Tr. 24. This was error. The Ninth Circuit has explained that "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). In other words, a "medical opinion may be relevant even if several years have passed between the date last insured and the date of the

opinion." *Charlene S. v. Comm'r of Soc. Sec.*, 2020 WL 2190657, at *3 (W.D. Wash. May 6, 2020) (citing *Smith*, 849 F.2d at 1225); *see also Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) ("[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.") (internal quotation marks and citation omitted). As such, Dr. Anasz-Kopecka's diagnosis of fibromyalgia after the relevant period was not a legally sufficient rationale for rejecting the opinion.[7]

### 2. Activities of Daily Living

The ALJ rejected Dr. Anasz-Kopecka's opinion because it was purportedly inconsistent with Plaintiff's reported activity levels. Tr. 24. The Commissioner asserts that Plaintiff's attendance at beauty school and ability to exercise at a gym conflicted with the doctor's opinion. A conflict between a medical opinion about cognitive and social functioning and a claimant's daily activities in some circumstances may permit an ALJ to reject a provider's opinion, but only where a holistic review of the record reveals an inconsistency between the opinion and a claimant's activities. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2013) (holding that the ability to complete "some basic chores and occasionally socializ[ing]" was not a valid reason to discount a doctor's opinion where a "holistic review of the record" demonstrated that the claimant "relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments"). The ALJ here similarly failed to take a holistic view of the record.

The ALJ concluded that Dr. Anasz-Kopecka's opinion was inconsistent with Plaintiff's graduation from beauty school. Tr. 24. However, the ALJ failed to identify an actual conflict

---

[7] The Commissioner's reliance on *Bayliss v. Barnhart* is similarly misplaced. 427 F.3d 1211, 1216 (9th Cir. 2005). *Bayliss* upheld an ALJ's rejection of a medical opinion where the provider's own clinical notes flatly "contradicted" the provider's opinion. *Id.* Here, the ALJ identified no such contradiction.

Page 13 — OPINION AND ORDER

Case 6:20-cv-00733-MK   Document 22   Filed 08/10/21   Page 14 of 20

with Dr. Anasz-Kopecka's opinion. As noted, Plaintiff took approximately thirty months to graduate from an eighteen-month program due to her depression and her providers frequently excused her absences. Tr. 49; *see also* Tr. 1039; Tr. 1042–43; Tr. 1055–56; Tr. 1059. Plaintiff's graduation from a program in nearly double the timeframe does not conflict with Dr. Anasz-Kopecka's opinion that Plaintiff would be off task frequently and need to miss work often. *See* Tr. 49, 1250. Moreover, Plaintiff's frequent inability to attend classes due to her impairments is consistent with Dr. Anasz-Kopecka's opined limitations. Accordingly, Plaintiff's graduation from beauty school was not a legally sufficient reason to reject Dr. Anasz-Kopecka's opinion.

Next, the ALJ concluded that Dr. Anasz-Kopecka's opinion was inconsistent with her ability to exercise. Tr. 21–24. As noted in Section I.A, Plaintiff exercised in an attempt to improve her mental health. Further, she did so at the behest of her providers. For example, in November 2009, Plaintiff was exercising four times a week to cope with stress, depression, and with the goal of eliminating her suicidal ideations. Tr. 1451; *see also* Tr. 1059 (advising "antidepressants, *exercise*, and NSAIDs") (emphasis added). Finally, to the extent an inconsistency existed between Dr. Anasz-Kopecka's opinion and Plaintiff's ability to exercise, the ALJ could have rejected the opinion by setting "out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). The ALJ failed to do so here. As such, Plaintiff's level of exercise was not a specific and legitimate reason to discount her testimony.

### 3.   Poorly Supported

Finally, the Commissioner argues the ALJ properly rejected Dr. Anasz-Kopecka's opinion because it was poorly supported. The ALJ, however, did not raise that rationale in his

Page 14 — OPINION AND ORDER

rejection of the doctor's opinion. The Court therefore may not affirm on that ground. *See Bray v. Comm 'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). The Court notes, however, that the record contains ample support for Dr. Anasz-Kopecka's opined limitations. *See, e.g.*, Tr. 25, Tr. 533–35 (February 2011: presenting with anxiety), Tr. 1088 (October 2011: presenting with anxiety, insomnia, and confusion), Tr. 1076 (March 2012: presenting with anxiety, sleep disturbance, low energy and depression), Tr. 1072 (April 2012: presenting with depression, anhedonia, insomnia, and fatigue), Tr. 1069 (May 2012: missing one month of school due to depression), Tr. 553 (May 2012: presenting with depression, anhedonia, avolition, and insomnia but normal mental status exam), Tr. 551 (June 2012: presenting with overwhelming anxiety preventing her from going to the gym), Tr. 552 (July 2012: presenting with anxiety and mood instability but normal mental status exam), Tr. 1061 (Oct 2012: presenting with worsening pain and depression), Tr. 1049 (Feb 2013: presenting with anxiety and treated with escitalopram).

In sum, the ALJ failed to identify legally sufficient reasons to reject Dr. Anasz-Kopecka's opinion and is therefore reversed.

**B.     Julian Kivowitz, M.D.**

When the Appeals Council vacated the ALJ's initial 2018 decision, it instructed the ALJ to "obtain medical testimony regarding the claimant's impairments through the date last insured to address the claimant's mental impairments and functional limitations." Tr. 117. Pursuant to that order, at a second hearing in 2019, the ALJ called Julian Kivowitz, M.D., to testify. Tr. 65–68, 1459.

At the hearing, Dr. Kivowitz found that Plaintiff had the medically determinable impairments of depression, bipolar and related disorders, as well as anxiety and obsessive-compulsive disorder. The doctor concluded that these conditions endured through the relevant period relying on host of treatment records. *See* Tr. 66, 68, 400–16, 471–528, 549–64, 919–1176, 1247–50, 1251–1441, 1442–56.

In terms of functional limitations, he opined that Plaintiff's mental impairment caused marked limitations in understanding; remembering and applying information; interacting with others; concentrating; persisting and maintaining pace; and self-management. Tr. 66–67.

The ALJ gave Dr. Kivowitz's opinion little weight. Tr. 25. The Commissioner argues the ALJ's rejection was proper because Dr. Kivowitz's opinion was (1) inconsistent with Plaintiff's activities; (2) inconsistent with examinations from the relevant period; (3) was poorly supported.

For the reasons explained in section II.A, the ALJ's rejection of Dr. Kivowitz's opinion fails for the same reasons. The Court, however, briefly addresses the Commissioner's argument that Dr. Kivowitz relied too heavily on records outside the relevant period. After an independent review of the records and hearing testimony, the ALJ's conclusion that the doctor's opinion relied too heavily on medical records related to Plaintiff's 2009 hospitalization and suicide attempt lacks support in the record. Tr. 65–68. Dr. Kivowitz discussed seven different medical exhibits from various records spanning from 2009 through 2019. Tr. 66, 68, 400–16, 471–528, 549–64, 919–1176, 1247–50, 1251–1441, 1442–56. Summarily concluding that the doctor relied too heavily on the 2009 records was insufficient; the ALJ was required to "set forth his own interpretations and explain why they, rather than the doctor[] are correct." *Garrison*, 759 F.3d at 1012 (internal citation omitted).

In sum, the ALJ failed to identify legally sufficient reasons to reject Dr. Kivowitz's opinion and is therefore reversed.

## III. RFC Formulation

Finally, Plaintiff contends the ALJ erred because the RFC failed to include all of the limitations in the record supported by substantial evidence. Pl.'s Op. Br. 18–19, ECF No. 18. A RFC reflects the most an individual can do. 20 C.F.R. §§ 404.1545, 416.945. In formulating a RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL 374184. In other words, limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001).

Here, the ALJ improperly discredited Plaintiff's testimony and the medical opinion evidence of record. By failing to incorporate all of Plaintiff's limitations into the RFC, the ALJ's conclusions lacks evidentiary support. *Id.* at 886; *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.") (internal citation omitted). This case must therefore be remanded.

## IV. Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings

depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Here, the first requisite is met based on the errors discussed above. The ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony and failed to provide legally sufficient reasons for rejecting the opinions of Drs. Anasz-Kopecka and Dr. Kivowitz.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). The Court finds that the record here has been fully developed no material conflicts and ambiguities exist. Although the Commissioner attempts to manufacture an ambiguity as to the precise date of when Dr. Anasz-Kopecka's opined limitations took effect, after reviewing the opinion, it is evident to the Court that the doctor found they applied at least through the relevant period.

As to the third requisite, crediting the discredited evidence as true, the ALJ would be required to find Plaintiff disabled on remand. Dr. Anasz-Kopecka opined that Plaintiff would be

Page 18 — OPINION AND ORDER

"off task" more than twenty-five percent of a workday. Tr. 1250. At the hearing, the VE testified that such a hypothetical employee would be unable to sustain gainful employment. Tr. 71. As such, on remand, the ALJ would be compelled to find Plaintiff disabled. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) (remanding for an immediate payment of benefits after crediting improperly rejected evidence as true, combined with VE testimony, established disability).

If a court concludes, as in this case, that a claimant meets the three criteria of the credit-as-true standard, the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–21 (citations omitted).

Considering the record as a whole, the Court concludes that there is no reason for serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1020–21 (citations omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021). The Court exercises its discretion and credits the erroneously discredited evidence as true and remands this case for an immediate calculation and payment of benefits.

//
//
//
//
//

## CONCLUSION

For the reasons explained above, the Commissioner's decision was not based on substantial evidence. Accordingly, the decision is REVERSED and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this <u>10th</u> day of August 2021.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge
